IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AAK USA RICHMOND CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WAREHOUSE UNION LOCAL 6 ILWU,<br><br>　　　　　Defendant. | Case No. 22-cv-01007-MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD; GRANTING DEFENDANT'S MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD; DIRECTIONS TO CLERK** |

　　　　Before the Court are two motions: (1) plaintiff AAK USA Richmond Corporation's ("AAK") "Motion to Vacate Arbitration Award," filed July 1, 2022; and (2) defendant Warehouse Union Local 6 ILWU's ("Union") "Motion to Confirm and Enforce Arbitration Award," filed July 15, 2022.  Both motions have been fully briefed.  Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND[2]

　　　　AAK is a corporation "engaged in the business of refining edible vegetable oils for various uses."  (See Pl.'s Am. Compl. to Vacate Arbitration Award ("AC") ¶ 2; Def.'s Answer to Pl.'s Am. Compl. ("Answer to AC") ¶ 2.)  The Union is an "unincorporated labor union" and "the exclusive collective bargaining representative" for certain individuals employed by AAK at its facility in Richmond, California, including those employees

---

[1] By order filed August 23, 2022, the Court took the matters under submission.

[2] The following facts are undisputed.

classified as "Working Foreperson[s]."  (See AC ¶ 3; Answer to AC ¶ 3.)  From September 1, 2018, through June 30, 2022, the parties' relationship was governed by a collective bargaining agreement.  (See AC ¶ 5; Answer to AC ¶ 5; see also Decl. of Kimberly Seten in Supp. of Pl.'s Mot. to Vacate Arbitration Award ("Seten Decl.") Ex. A (collective bargaining agreement ("CBA")).)

On June 30, 2022, "AAK notified two of the three Working Forepersons employed at" the Richmond facility "that their positions had been 'eliminated as part of an AAK restructuring plan' and that they were being permanently laid off."  (See Def.'s Countercl. to Confirm & Enforce Arbitration Award ("Countercl.") ¶ 14; Pl.'s Answer to Def.'s Countercl. ("Answer to Countercl.") ¶ 14.)  Later that same date, the Union submitted a grievance under a dispute resolution procedure set forth in the CBA.  (See Countercl. ¶ 15; Answer to Countercl. ¶ 15; see also CBA § 19.2 (dispute resolution procedure); Seten Decl. Ex. B (grievance form).)  The "[n]ature of [the] [d]ispute" was described on the grievance form as "[m]anager performing union duties."  (See Seten Decl. Ex. B.)

At an arbitration hearing held on March 9, 2021, and March 10, 2021, the Union took the position that AAK had violated the CBA by laying off two Working Forepersons and assigning Working Forepersons' duties to "managers outside the bargaining unit."  (See id. Ex. H at 18-21.)  AAK, on the other hand, took the position that the issue regarding the propriety of the layoffs was "outside the scope of the grievance submitted" to the arbitrator and that, even if the layoff issue were "considered part of the grievance," none of AAK's challenged conduct violated the CBA.  (See id. Ex. H at 21-26.)

In an "Opinion and Award" issued after the hearing (hereinafter, "Interim Award"), the arbitrator found, "under the circumstances described" at the hearing, "[t]he layoffs of [the two] Working Forepersons . . . and the performance of bargaining unit work by managers . . . violated [s]ections 1.1 and 4.1 of the [CBA]."  (See id. Ex. H at 34.)  Section 1.1 of the CBA, titled "Union Recognition," provides that "[t]he Union recognized as the sole collective bargaining agent for all Employees covered by this Agreement will be ILWU Local 6," and that "[s]uch employees shall be those employed in the

2

classification of Laboratory Technician, Senior Quality Technician and Working Foreperson." (See CBA § 1.1.)  Section 4.1, titled "Changes and Interpretations," provides that "[n]o changes in this Agreement or interpretations thereof (except interpretations resulting from adjustment board or arbitration proceedings hereunder) will be recognized unless agreed to by the Employer and the Union." (See CBA § 4.1.)  In light of his findings with respect to liability, the arbitrator "remanded [the matter] to the parties to determine what would constitute an appropriate remedy for [AAK's] violations," and, further, ordered that, "[i]n the event the parties fail[ed] to reach agreement on [the] issue within sixty days" thereafter, "the issue [was to be] returned to the [a]rbitrator for final and binding determination." (See Seten Decl. Ex. H at 34.)

On December 9, 2021, the parties having been unable to agree as to an appropriate remedy, the matter was returned to the arbitrator for supplemental proceedings.  (See id. Ex. K at 1.)  On January 6, 2022, the arbitrator issued an "Opinion and Award Re: Remedy" (hereinafter, "Supplemental Award"), wherein he ordered that the two laid-off Working Forepersons "be reinstated immediately to their former classifications" and "made whole for all wages and benefits . . . lost as a result of their improper layoffs." (See id. Ex. K at 8-9.)

On February 18, 2022, AAK filed the instant action, in which it asserts a single cause of action seeking vacatur of the arbitrator's Interim and Supplemental Awards (collectively, the "Awards").  On April 6, 2022, the Union filed an Answer and Counterclaim, by which it seeks confirmation and enforcement of the Awards.

**LEGAL STANDARD**

"Because of the centrality of the arbitration process to stable collective bargaining relationships, courts reviewing labor arbitration awards afford a nearly unparalleled degree of deference to the arbitrator's decision." S.W. Reg'l Council of Carpenters v. Drywall Dynamics, Inc. ("Drywall"), 823 F.3d 524, 530 (9th Cir. 2016) (internal quotation and citation omitted).  Consistent therewith, the Ninth Circuit has recognized four "limited circumstances" in which "the vacatur of a labor arbitration award is justified":

3

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

See id.

## DISCUSSION

By its motion to vacate, AAK seeks an order vacating the Awards on the ground that the arbitrator exceeded the authority granted to him under the following language in the arbitration clause of the CBA:

> . . . [T]he arbitrator shall have no power to amend or modify this Agreement[.]  Decisions of the arbitrator shall be within the scope of and shall not vary from the express written terms of this Agreement.  Any decision shall be based solely upon the interpretation of the meaning or application of the express written terms of this Agreement to the facts of the grievance as presented.

(See Mot. to Vacate at 6:11-13 (quoting CBA § 19.2).)  Specifically, AAK contends (1) the arbitrator exceeded the boundaries of the issues submitted to him, (2) the Interim Award was not based on the "express written terms" of the CBA, and (3) the arbitrator impermissibly ordered the parties to bargain as to an appropriate remedy.  The Court addresses each of AAK's asserted bases for vacatur in turn.

**A. Scope of Issues Presented**

First, relying on language in the above-quoted arbitration clause requiring that the arbitrator's decision be based on his application of the CBA to the "grievance as presented," AAK contends the arbitrator exceeded his authority by considering and deciding "the issue regarding the propriety of [the] layoffs." (See id. at 14:18-19, 15:25-27.)  As set forth below, the Court disagrees.

"[A]n arbitrator's interpretation of the scope of the issue submitted to him" is entitled to "great deference." See Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285-86 (9th Cir. 1989).

In the instant case, the parties, prior to the arbitration hearing, were "unable to agree on a statement of the issue to be decided" by the arbitrator.  (See Seten Decl. Ex.

C at 8.)  At the hearing, the Union took the position that the issues to be decided were whether AAK "violate[d] the [CBA] by laying off [W]orking [F]orepersons . . . and/or by having managers perform bargaining unit work," and, "if so, what . . . the appropriate remedy" should be.  (See id.)  AAK, on the other hand, took the position that the arbitrator's authority to frame the scope of the issue was confined to his interpretation of the grievance "as presented" in the "four words" written on the grievance form submitted by the Union, i.e., "[m]anager performing union duties."  (See id. Ex. C at 9-10.)  After stating their respective positions on the matter, the parties "agree[d] that the arbitrator ha[d] authority to frame the issue once all . . . evidence and argument ha[d] been received."  (See id. Ex. C at 15.)

In his Interim Award, the arbitrator interpreted the arbitration clause as allowing him to consider the grievance "as presented" to him at the arbitration hearing and, accordingly, determined the scope of the issue submitted to him encompassed both the propriety of managers performing union duties and the propriety of the layoffs.  (See id. Ex. H at 28.)  In so finding, the arbitrator noted AAK had "sufficient notice that the layoffs were in dispute" because the grievance had been "filed on the very day . . . the notices of layoff were issued to the grievants," the parties had "directly" addressed the issue at earlier stages of the grievance process, and the question of "whether the layoffs were consistent with" the CBA was "directly linked" to the question of "whether[] . . . managers were performing 'union duties.'"  (See id. Ex. H at 27-28 (finding AAK was neither "blind-sided" nor "unduly prejudiced by . . . inclusion" of layoff issue).)

"Given the strong interdependence" of the two issues, as well as "the absence of any clear indication" of what the phrase "grievance as presented" required, see Pack Concrete, 866 F.2d at 286, the Court finds the arbitrator did not exceed his authority in concluding that the question regarding the propriety of the layoffs was within the boundaries of the issues submitted to him, see id. (finding, where CBA limited arbitrator's authority to deciding "only issues submitted in writing" and lacked "any clear indication of what the 'in writing' provision require[d]," arbitrator "did not exceed his authority" in

concluding issues submitted included not only "seniority and recall," as written on the union's "arbitration request form," but also "discharge," as raised in parties' written correspondence leading up to request for arbitration).[3]

**B. Express Written Terms**

Next, AAK contends the arbitrator exceeded his authority in finding AAK violated sections 1.1 and 4.1 of the CBA. Specifically, AAK argues, neither section contains any "'express written terms' that could be construed as restrictions on work assignment, work protection, or layoffs" (see Mot. to Vacate at 12:19-22), and, thus, the arbitrator essentially "added . . . a substantive 'work protection' restriction and a substantive 'layoff' restriction" to the CBA, in "direct contravention" of the requirement that "any decision be within the scope of and not vary from the 'express written terms'" of the CBA (see id. at 13:8-22). Again, the Court is unpersuaded.

As the Ninth Circuit has made clear, a "court may not evaluate an arbitrator's interpretation of an agreement to determine whether it meets some judicial standard of acceptability as a construction of the contract," nor may a court "reject an award on the ground that the arbitrator misread the contract." See Drywall, 823 F.3d at 530-31. Rather, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, his award must be upheld," even where the court "is convinced he committed serious error." See id. at 530-32 (internal quotation and citation omitted) (requiring "judicial 'hands off' approach . . . in labor arbitration cases, as long as the arbitrator engages with the interpretive task").

Here, contrary to AAK's argument, the arbitrator did not "add[] implied restrictions" to the CBA (see Mot. to Vacate at 8:7-9), but, rather, grounded his Interim Award in his

---

[3] To the extent AAK argues the arbitrator lacked authority to consider the layoff issue because AAK "objected to its arbitrability" at the arbitration hearing (see Mot. to Vacate at 14:18-19), such argument, as the Union points out, "is akin to an argument that the [a]rbitrator only had the authority to determine the scope of the issue if AAK agreed with his determination" (see Def.'s Reply Mem. in Supp. of Mot. to Confirm & Enforce Arbitration Award at 4:23 n.2).

interpretation of its express written terms.  In particular, the arbitrator interpreted section 1.1 as "plac[ing] the duties of [Working Forepersons] within the Union's exclusive jurisdiction" and imposing "certain constraints on [AAK's] right to determine the size and composition of the workforce," as well as "its authority to assign work," and, based thereon, found AAK, by "removing such work from the bargaining unit" without approval from the Union, had "unilaterally altered" the CBA in violation of section 4.1.  (See Seten Decl. Ex. K at 6 (summarizing "central rationale for . . . conclusion" reached in Interim Award).)[4]

Consequently, "even if [the Court] were convinced that the arbitrator misread the [CBA] or erred in interpreting it, such a conviction would not be a permissible ground for vacating the [Awards]."  See Drywall, 823 F.3d at 530, 532; see also Teamsters Loc. 856 v. Delta Dental of Calif., Case No. 16-cv-04325-JCS, 2017 WL 5665668, at *8-9 (N.D. Cal. Nov. 26, 2017) (affirming arbitrator's award despite finding arbitrator's reasoning "[un]persuasive"; finding, where "[a]rbitrator did not ignore [CBA] terms outright, but instead, offered several reasons" supporting her interpretation of relevant terms, arbitrator's interpretation was not "so untethered from the terms of the CBA that it constitute[d] her 'own brand of industrial justice'").[5]

---

[4] In so finding, the arbitrator noted similar recognition clauses have been interpreted as restricting "management's right to assign work out of the bargaining unit." (See Seten Decl. Ex. H at 31); see also Elkouri & Elkouri, How Arbitration Works 13-139 (6th ed. 2016) (noting arbitrators have "ruled against the right of management to assign work out of the bargaining unit" on the ground that "the recognition . . . clause is violated by such action").

[5] The cases cited by AAK are readily distinguishable in that, in each instance, the arbitrator's award directly conflicted with the plain language of the parties' agreement. See Randall Mfg., Inc. v. Loc. Union No. 814, 838 F. Supp. 325, 328-29 (E.D. Mich. 1993) (finding, where CBA "unambiguously" prohibited "arbitrator from implying into the agreement provisions which [were] not in the express written terms of the agreement," arbitrator exceeded his authority by "unequivocally stat[ing] that 'a just cause criteria c[ould] be . . . *implied* from the terms of the . . . [a]greements'" (internal quotation and alterations omitted)); L.A. Times Commc'ns v. Graphic Commc'ns Conf. Int'l Brotherhood of Teamsters, Case No. CV13-06192 RGK (RZx), 2013 WL 12139835, at *5 (C.D. Cal. Oct. 8, 2013) (finding, where CBA provided employer had "'sole discretion' to assign supervisors to perform union work," arbitrator exceeded his authority by finding employer lacked discretion to assign such work except in "emergency . . . or . . . intrinsically limited situations"); United Food & Com. Workers Union v. United Mkts., Inc., 784 F.2d 1413,

1    Likewise unavailing is AAK's argument that the arbitrator exceeded his authority
2    by finding AAK did not violate section 7.2 but "nonetheless violated the CBA."  (See Mot.
3    to Vacate at 13:24-14:1; CBA § 7.2 (providing reductions in work force "due to slackness
4    of work" shall be implemented by "seniority").)  AAK cites no authority, and the Court has
5    found none, suggesting an arbitrator's finding of compliance with a provision specific to a
6    subject will categorically preclude a finding of a violation of one or more other provisions
7    relevant thereto.

**C. Bargaining**

Lastly, AAK contends the arbitrator exceeded his authority by remanding the matter "to the parties to determine what would constitute an appropriate remedy for [AAK's] violations."  (See Mot. to Vacate at 17:4-5.)  In support thereof, AAK relies on section 22.1 of the CBA, which provides, in relevant part, "Neither party shall, during the term of this Agreement, demand any change therein nor shall either party be required to bargain with respect to any matter.  (See Mot. to Vacate at 17:11-24 (quoting CBA § 22.1).)

As the Union points out, however, there is no indication section 22.1 either applies to "the parties' dispute resolution process" or "impose[s] any limitation on [the] arbitrator's authority under that process."  (See Def.'s Mot. to Confirm & Enforce Arbitration Award ("Mot. to Confirm") at 12:12-13.)  Moreover, contrary to AAK's argument, the arbitrator did not "order[] the [p]arties to bargain" away their rights under the CBA (see Mot. to Vacate at 17:14-16), but, rather, simply gave the parties an opportunity to "come to an agreement on what might be an appropriate remedy" (see Seten Decl. Ex. K at 1).

---

1416 (9th Cir. 1986) (finding, where subject agreement "call[ed] for loss of . . . General Clerk classification upon [employer's] *second* violation" of subject agreement, arbitrator exceeded his authority in finding "no permanent loss of the General Clerk classification would ensue until the *third* violation"); Federated Emps. of Nev., Inc. v. Teamsters Loc. No. 631, 600 F.2d 1263, 1264-65 (9th Cir. 1979) (finding, where CBA required arbitrator to "select as his award either the last offer made by the [e]mployers or the last offer made by the [u]nion . . . with no modification or compromise in any fashion," arbitrator exceeded his authority by awarding modified version of union's final offer).

**CONCLUSION**

For the reasons stated above:

1. AAK's motion to vacate is hereby DENIED.

2. The Union's motion to confirm and enforce is hereby GRANTED.

The Clerk shall enter judgment on the arbitrator's Interim and Supplemental Awards.[6]

**IT IS SO ORDERED.**

Dated: August 31, 2022

MAXINE M. CHESNEY
United States District Judge

---

[6] To the extent the Union intends to file a motion for attorneys' fees (see Mot. to Confirm at 13:11), any such motion shall be made in accordance with the Federal Rules of Civil Procedure and the Civil Local Rules of this District, see Fed. R. Civ. P. 54(d)(2); Civil L.R. 54-5.